UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA M. STROM,

                                  Plaintiff,

               v.

NATIONAL ENTERPRISE SYSTEMS, INC.,

                                  Defendant.

_____

|  |
|--|
| **DECISION**<br>**and**<br>**ORDER** |
| **----------------------------** |
| **REPORT**<br>**and**<br>**RECOMMENDATION** |
| **09-CV-0072A(F)** |

APPEARANCES:          LAW OFFICES OF KENNETH HILLER
                      Attorneys for Plaintiff
                      KENNETH R. HILLER, and
                      AMANDA R. JORDAN, of Counsel
                      6000 North Bailey Avenue
                      Suite 1A
                      Amherst, New York 14226

                      CHRISTOPHER WILLIAM McMASTER, ESQ.
                      Attorney for Defendant
                      528 Brisbane Building
                      403 Main Street
                      Buffalo, New York 14203

                      SURDYK, DOWD & TURNER CO., L.P.A.
                      Attorneys for Defendant
                      BOYD W. GENTRY, of Counsel
                      1 Prestige Place
                      Miamisburg, Ohio 45342


## JURISDICTION

        This case was referred to the undersigned by Honorable Richard J. Arcara on

February 23, 2009 for all pretrial matters.  The matter is presently before the court on

Defendant's motions, filed June 30, 2010, for summary judgment (Doc. No. 42), and

September 2, 2010, to strike portions of Plaintiff's affidavit filed in opposition to

summary judgment (Doc. No. 47).[1]


## **BACKGROUND**

On January 22, 2009, Plaintiff Lisa M. Strom ("Plaintiff" or "Strom") filed a

Complaint commencing the instant action alleging violations of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692, *et seq*. ("the FDCPA" or "the Act").  On September 24,

2009, Plaintiff filed an amended complaint (Doc. No. 23) ("Amended Complaint")

asserting the same FDCPA claims set forth in the original complaint, and also asserting

a New York common law claim for intentional infliction of emotional distress.

Plaintiff specifically alleges Defendant National Enterprises, Inc. ("Defendant" or

"NES"), violated 15 U.S.C. §§ 1692d and 1692d(2), "by using language the natural

consequence of which was abuse [of] the hearer," Amended Complaint ¶ 24.A ("First

Claim"), 15 U.S.C. § 1692d(5) "by repeatedly causing Plaintiff's telephone to ring with

the intent to annoy, abuse and harass," Amended Complaint ¶ 24.B ("Second Claim"),

and 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10) "by [falsely] stating

Defendant would freeze Plaintiff's bank accounts and take away Plaintiff's Social

Security Disability Insurance, stating Plaintiff must be in court imminently," because

Defendant had already filed in Tonawanda Court[2] a claim against Plaintiff for $ 26,000,

and that Defendant had been authorized by Plaintiff's creditors to commence legal

---

[1] Although Defendant's motion for summary judgment is dispositive, and Defendant's motion to strike is nondispositive, both motions are addressed in this combined Decision and Order and Report and Recommendation in the interests of clarity and judicial convenience.

[2] Whether Defendant's alleged reference are to City of Tonawanda Court or to Tonawanda Town Court is not clear from the record.

action to collect such claim, Amended Complaint ¶ 24.C ("Third Claim"),[3,4] and that

Defendant's allegedly unlawful actions caused Plaintiff to become nervous, anxious,

upset, and to suffer from physical symptoms and emotional distress in violation of New

York common law, Amended Complaint ¶ 25 ("Fourth Claim").  In connection with her

claims, Plaintiff seeks actual damages, statutory damages, costs, disbursements, and

attorneys fees pursuant to 15 U.S.C. § 1692k.  *Id.* ¶ 29.

On June 30, 2010, Defendant filed a motion seeking summary judgment (Doc.

No. 42) ("Defendant's Summary Judgment Motion"), supported by Defendant's

Memorandum of Law in Support of Its Motion for Partial[5] Summary Judgment (Doc. No.

42-7) ("Defendant's Summary Judgment Memorandum "), Statement of Facts Pursuant

to Local Rule 56.1(a) (Doc. No. 42-2) ("Defendant's Statement of Facts"), the Affidavit

of Eric Thut in Support of Defendant's Motion for Summary Judgment ("Thut Affidavit")

(Doc. No. 42-5), and Defendant's Appendix of Exhibits A through C to Local Rule

56.1(a) Statement of Material Facts (Doc. No. 42-3) ("Defendant's Exh(s). __").

In opposition to Defendant's Summary Judgment Motion, on August 19, 2010,

Plaintiff filed Plaintiff's Response to Defendant's Material Statement of Facts (Doc. No.

---

[3] Paragraph 24.C of Plaintiff's Amended Complaint is incomplete; nevertheless, because the Amended Complaint's FDCPA claims are essentially identical to the FDCPA claims asserted in the original Complaint, the court references  ¶ 24.C in the Complaint for the missing portion of Plaintiff's Third Claim as set forth in the Amended Complaint.

[4] Although Plaintiff, in the Amended Complaint only refers to one claim under the FDCPA, a careful reading of the Amended Complaint establishes three separate and distinct FDCPA violations are alleged, and the court addresses them as such.

[5] Defendant's Summary Judgment Motion states it seeks "summary judgment," rather than "partial summary judgment," and the papers filed in support of the motion reveal Defendant seeks summary judgment on all of Plaintiff's claims.  *See, e.g.*, Defendant's Summary Judgment Memorandum at 1 ("Plaintiff's claims lack evidentiary support.  Accordingly, NES is entitled to summary judgment.").

45) ("Plaintiff's Statement of Facts"), a Memorandum of Law in Opposition to

Defendant's Motion for Partial Summary Judgment (Doc. No. 44) ("Plaintiff's Summary

Judgment Memorandum"), the Affidavit of Plaintiff, Lisa Strom (Doc. No. 44-4)

("Plaintiff's Affidavit"), Plaintiff's Appendix Pursuant to Local Rule 56.1(d) Statement of

Material Facts (Doc. No. 44-2) ("Plaintiff's Appendix"), with exhibits A and B (Docs. Nos.

44-3 through 44-4) ("Plaintiff's Exh(s). __").  On September 2, 2010, Defendant filed a

Reply in Support of Defendant's Motion for Partial Summary Judgment (Doc. No. 46)

("Defendant's Summary Judgment Reply"), transcripts of the October 12, 2009

videotaped depositions of LaShandra Spencer ("Spencer Transcript"), Joseph Yanock

("Yanock Transcript") (Doc. No. 46-2), and Linda Saleh ("Saleh Transcript") (Doc. No.

46-2) and the Amended Affidavit of Eric Thut ("Thut Supplemental Affidavit")[6] (Doc. No.

46-3).

On September 2, 2010, Defendant filed a Motion to Strike portions of Plaintiff's

Affidavit (Doc. No. 47)("Defendant's Motion to Strike"), supported by the attached

Memorandum of Law ("Defendant's Motion to Strike Memorandum").  On October 5,

2010, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion to Strike

Plaintiff's Affidavit (Doc. No. 51) ("Plaintiff's Motion to Strike Memorandum").  Defendant

filed, on October 12, 2010, Defendant's Reply In Support of its Motion to Strike Portions

of Plaintiff's Affidavit (Doc. 52) ("Defendant's Motion to Strike Reply").  Oral argument

was deemed unnecessary.

Based on the following, Defendant's Motion to Strike is DENIED; Defendant's

---

[6] Although Defendant denominates Doc. No. 46 as an amended affidavit, a plain reading of the document reveals it contains statements supplementing, rather than amending, the Thut Affidavit filed June 30, 2010.

Summary Judgment Motion should be DENIED.

## **FACTS**[7]

In June 2004, Plaintiff Lisa M. Strom ("Plaintiff" or "Strom"), underwent surgery to

remove a malignant brain tumor, and was rendered unable to work.  Subsequent to the

surgery, Plaintiff received Social Security Disability Income ("SSDI"), had no other

income, but did have debts, including a credit card loan with Citibank ("Citibank"), and a

student loan with National Collegiate Trust ("the subject debts").  Amended Complaint ¶

10. Defendant National Enterprise Systems, Inc. ("Defendant" or "NES") was employed

by Citibank and National Collegiate Trust to collect the subject debts. With no income

with which to make required payments, Plaintiff defaulted on the subject debts.  In

March 2008, an employee of NES contacted Plaintiff by telephone in an attempt to

collect the subject debts.[8]  Defendant's employees continued to contact Plaintiff by

telephone at least once a month between October and November 2008, in an attempt

to collect the subject debts. In each telephone conversation with NES, when Plaintiff

inquired why Defendant continued to contact her despite its knowledge that she was

unable to pay the subject debts.  Defendant's collector stated the telephone calls would

continue until Plaintiff paid the subject debts.

According to Plaintiff, during one of the telephone calls between March and

---

[7] Taken from the pleadings and motion papers filed in this action.

[8] Plaintiff alleges Defendant first contacted Plaintiff in March 2008, Amended Complaint ¶ 15. Defendant alleges Plaintiff was first contacted in October 2008, Thut Supplemental Affidavit ¶ 5.

November 2008,[9] Defendant advised it would freeze Plaintiff's bank account and seize any SSDI benefits in Plaintiff's bank account. Amended Complaint ¶ 16. When Plaintiff replied that Defendant could not legally seize her SSDI funds, Defendant's representative replied whether Defendant could actually seize SSDI funds was irrelevant because Plaintiff's bank account would be frozen. *Id*. Plaintiff claims she began suffering seizures upon being told Defendant planned to freeze her bank account. *Id*.

For instance, on November 10, 2008, Defendant telephoned Plaintiff to collect the subject debts, which Plaintiff explained she was unable to pay. Defendant accused Plaintiff of deliberately not paying the subject debts and "trying to screw [Defendant] over." Amended Complaint ¶ 17 (bracketed material added). Plaintiff explained she had been diagnosed with brain cancer and was financially unable to make payments on the subject debts. *Id*. Defendant advised Plaintiff's bank accounts would be "frozen" and terminated the call. *Id*.

Later that same day, Plaintiff called Defendant and spoke with an NES employee identified as Mr. Bailey ("Bailey"),[10] who stated Plaintiff had to appear in Tonawanda Court and pay $16,000 of the subject debts, and $27,000 in total for court costs. Amended Complaint ¶ 18. Bailey further advised that if Plaintiff paid $3,500 prior to the court appearance scheduled for November 21, 2008, Defendant NES would settle the subject debts for $4,000. *Id*. Defendant transferred Plaintiff's call to Mark Ellis ("Ellis"),

---

[9] Plaintiff does not further specify the date of such call.

[10] Mr. Bailey's first name is not found in the record.

who inquired whether Plaintiff was able to pay $3,500 of the subject debts.  *Id.* ¶ 19.

When Plaintiff stated she was unable to pay $3,500 of the subject debts, Ellis informed

Plaintiff he would mark Plaintiff's account as a "refusal to pay," that the subject debts

would cost Plaintiff $26,000, and hung up the phone.  *Id.*  Plaintiff claims she suffered

another seizure during the November 10, 2008 telephone calls with Defendant.  *Id.*

On November 14, 2008, Defendant called Plaintiff to explain Defendant was

filing a claim against Plaintiff for the subject debts.  *Id.* ¶ 20.  Plaintiff alleges she

suffered a seizure after the November 14, 2008 telephone call.  *Id.* ¶ 21.

Plaintiff maintains that following each telephone conversation with Defendant,

Plaintiff experienced stress, became nervous, upset, anxious and suffered from

physical symptoms and emotional distress. Amended Complaint ¶ 22.

## DISCUSSION

1.    **Motion to Strike**

Defendant has moved to strike portions of the Plaintiff's Affidavit filed in

opposition to summary judgment on the basis that it improperly attempts to prove a

causal connection between Defendant's telephone calls and Plaintiff's seizures based

on inadmissible hearsay.  Defendant's Motion to Strike Memorandum at 2. Defendant

argues that striking portions of the Plaintiff's Affidavit is warranted as none of the

information provided by Plaintiff regarding Plaintiff's seizures related to Defendant's

collection actions based on Plaintiff's personal knowledge, that Plaintiff failed to show

affirmatively that she is competent to describe the facts stated in her affidavit, and that

Plaintiff's attempts to rely on statements made to her by her physician for the truth of

the matter asserted constitute inadmissible hearsay.  *Id*.

In opposition to the Defendant's Motion to Strike, Plaintiff maintains that 1) Plaintiff's statements explaining her symptoms do not constitute improper medical opinions; 2) that Plaintiff is competent to testify as to when and under what circumstances she suffers or is likely to suffer seizures; 3) Plaintiff's belief that stress causes seizures (based on the opinion of Plaintiff's physician) is admissible under Fed.R.Evid. 801(3) to show Plaintiff's state of mind; 4) Plaintiff's statements are admissible to establish Defendant's conduct meets the threshold requirement for intentional infliction of emotional distress; and 5) Defendant's reliance on Plaintiff's deposition testimony as evidence places Plaintiff's testimony before the court rendering Plaintiff's statements in Plaintiff's Affidavit unnecessary.  Plaintiff's Motion to Strike Memorandum at 1-8.

Insofar as Defendant seeks to strike each of the challenged portions of Plaintiff's Affidavit for lack of personal knowledge, Defendant's Motion to Strike Memorandum at 1, Defendant essentially characterizes Plaintiff's statements as hearsay, defined as "a statement, other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted."  Fed.R.Evid.  801(c).  Fed. R. Civ. P. 56(e) provides that

> [a] supporting and opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated.

Because hearsay is not admissible as evidence, hearsay statements in affidavits cannot be relied upon to avoid summary judgment.  *Estate of Hamilton v.  City of New York*, 627 F.3d 50, (2d Cir.  2010) (holding district court properly excluded hearsay statement that was not subject to any of the hearsay exceptions from evidence offered

in opposition to summary judgment).

Upon a motion for summary judgment, "[a] court may therefore strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.), *cert. denied*, 528 U.S. 965 (1999). To the extent an affidavit contains hearsay and other admissible evidence, a court may separately consider the admissible evidence. *John Hancock Property and Casualty Insurance Co. v. Universale Reinsurance Co., Ltd.*, 147 F.R.D. 40, 45 (S.D.N.Y. 1993). The court considers whether any of the statements Defendant challenges in Plaintiff's Affidavit are inadmissible hearsay.

## A.   Statements Based on Personal Knowledge

A plain reading of Defendant's Motion to Strike establishes that Defendant seeks to strike statements contained in ¶¶ 4, 5A, 5B, 5D, 5E, 5F, 6, 7, 9, and 10 of Plaintiff's Affidavit because such statements are not based on Plaintiff's personal knowledge. Defendant's Motion to Strike Memorandum at 2-3. The particular statements Defendant seeks to strike include "and that they could cause me to suffer seizures," ¶ 4, "[u]pon hearing this, I began to suffer seizures," ¶ 5A, "[a]t the conclusion of the telephone call, I began to suffer seizures, and found it difficult to breathe," ¶ 5B, "I suffered another seizure during the course of the November 10, 2008 telephone calls," ¶ 5D, "I suffered another seizure when the telephone call ended," ¶ 5E, "and that the stress caused by the calls caused her to suffer seizures," ¶ 5F, "I have noticed that when I experience mental stress, that I often will suffer a seizure. In fact, I have noticed

9

that my seizures differ when they are in reaction to a stressful situation as opposed to non-stress factors," ¶ 6, " [t]hat during each of the telephone calls described herein, I suffered a seizure . . . [t]hese are the types of seizures I have had in reaction to mental stress in the past," ¶ 7, "[t]hat in addition to the seizures I have suffered, the telephone calls and conversations described herein were a great source of anxiety, stress, and were extremely upsetting," ¶ 9, and "[i]n addition it was extremely upsetting to continue to receive the harassing and threatening telephone calls despite my pleas to stop because I could not handle them and that they caused seizures." ¶ 10.  Defendant's Motion to Strike Memorandum at 2-3. Contrary to Defendant's contention that such statements are inadmissible hearsay, the court finds such statements are merely Plaintiff's own description of what Plaintiff personally experienced in connection with telephone calls from the Defendant's employees. *See, e.g.*, Plaintiff's Affidavit ¶ 5A ("Upon hearing this, I began to suffer seizures.").

Nor is there any merit to Defendant's assertion that Plaintiff's Affidavit contains statements in which Plaintiff asserts a causal connection between and Defendant's contacts with Plaintiff and Plaintiff's seizures such that Plaintiff is asserting as evidence an expert medial opinion Plaintiff is unqualified to make.  Defendant's Motion to Strike Memorandum at 2, 3.  Plaintiff claims to have suffered emotional distress as a result of Defendant's calls, Amended Complaint ¶ 22, and such alleged distress is the basis for Plaintiff's state law emotional distress claim.  Amended Complaint ¶ 25.  Significantly, it is established that "'[w]hen the emotional distress alleged to have been suffered is the sort that would be experienced by reasonable people under the circumstances, some damage, even if merely nominal damage, can be presumed . . .. The extent of plaintiff's

injury can be proved by plaintiff's testimony alone.'" *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp.2d 389, 394 (W.D.N.Y. 2009) (quoting *In re Baker*, 18 B.R. 243, 245 (Bankr. W.D.N.Y. 1982)).  Accordingly, because the statements in Plaintiff's Affidavit challenged by Defendant in paragraphs 4, 5A, 5B, 5D, 5E, 5F, 6, 7, 9 and 10 describe what Plaintiff personally experienced under the circumstances of Defendant's calls, such statements are, contrary to Defendant's argument, based on Plaintiff's personal knowledge, and necessary to establish Plaintiff's injury based on emotional distress. The statements therefore are not hearsay and, as such, are admissible under Rule 56(e).

Defendant's Motion to Strike paragraphs 4, 5A, 5B, 5D, 5E, 5F, 6, 7, 9 and 10 is DENIED.


**B.      State of Mind Hearsay Exception**

Defendant also challenges Plaintiff's averment, Plaintiff's Affidavit ¶ 8, "[t]hat I have spoken to my neurologist, Laszlo Mechtler, M.D., about my seizure condition. Dr. Mechtler had told me on multiple occasions to avoid mental stress, that mental stress can cause seizures, and that the type . . . ,"[11] Defendant's Motion to Strike Memorandum at 2, contending that such admonitions constitute a physician's warning for which Plaintiff has failed to produce any medical records or physician's affidavit to support such statement.  *Id*. at 4-5.  Plaintiff argues in opposition that the statement is

---

[11] Plaintiff notes ¶ 8 of Plaintiff's Affidavit contains a typographical error, Plaintiff's Motion to Strike Memorandum at 5, and that the sentence should conclude "of seizures she suffered as the result of stress differed from non-stress caused seizures." *Id*.

admissible to show Plaintiff's state of mind upon receiving Defendant's alleged stress-inducing telephone calls, as well as to establish that Plaintiff suffered extreme emotional distress, which is an element of Plaintiff's common law infliction of emotional distress claim.  Plaintiff's Motion to Strike Memorandum at 5-7.

Initially, Plaintiff's statement regarding Dr. Mechtler's advice constitutes a physician warning which, lacking a supporting declaration from the physician, is considered hearsay.  *Walker v.  Kubicz*, 996 F.Supp. 336, 340 (S.D.N.Y. 1998) (disallowing as inadmissible hearsay nephrologist's opinion, cited in prison physician's declaration in support of summary judgment, that there was no risk to inmate plaintiff from shortened or delayed dialysis treatment insofar as such opinion was offered for its truth).  Here, Plaintiff's averment that Dr. Mechtler told Plaintiff to avoid mental stress, without a supporting declaration by Dr. Mechtler, is hearsay. Nevertheless, the statement qualifies pursuant to Fed.R.Evid. 803(3) as a hearsay exception and thus is admissible.

In particular, Fed.R.Evid. 803(3) (hearsay exceptions) provides

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Plaintiff's statement "[t]hat I have spoken to my neurologist, Lazlo Mechtler, M.D., about my seizure condition. Dr. Mechtler had told me on multiple occasions to avoid mental stress, that mental stress can cause seizures," Plaintiff's Affidavit ¶ 8, is an utterance to show the effect on Plaintiff's state of mind.  *Walker*, 996 F.Supp. at 340 (holding although prison physician's statement of nephrologist's opinion was inadmissible to

prove truth of matter asserted, such statement was admissible to prove prison physician's state of mind as to proper treatment for inmate plaintiff).  *See also Ferrara v. Galluchio*, 152 N.E.2d 249, 251 (N.Y. 1958)( dermatologist's statement plaintiff should get her shoulder checked every six months because there was a possibility that cancer might develop introduced to establish a basis for plaintiff's anxiety not inadmissible hearsay); 2 McCormick on Evidence § 249, at 134 (Kenneth S. Broun, 6th ed. 2006).  Plaintiff's averment in ¶ 8, is thus admissible under Fed.R.Evid. 803(3) to show Plaintiff's state of mind based on what Plaintiff understood Dr. Mechtler said to her regarding causative factors for her seizures, rather than to establish as Dr. Mechtler's medical opinion that Defendant's calls, in fact, caused Plaintiff's seizures. Defendant does not challenge Plaintiff's proposed testimony based on such statements as inadmissible for lack of relevancy.

Accordingly, Defendant's Motion to Strike paragraph 8 is DENIED.


**2.      Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact, and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor

may be drawn, a moving party cannot obtain a summary judgment. *Celotex* at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

In the instant case, Defendant moves for summary judgment arguing Plaintiff is unable to sustain Plaintiff's burden establishing she is entitled to actual damages based on Defendant's alleged violation of the FDCPA because Defendant's actions do not, as a matter of law, constitute harassment, oppression, or abuse under the Act, Defendant's Summary Judgment Memorandum at 4, and that Plaintiff lacks evidence to support her claim for intentional infliction of emotional distress under New York law. *Id.* at 7. In opposition to Defendant's Motion for Summary Judgment, Plaintiff argues that a material issue of fact exists as to whether Defendant's conduct meets the standard to establish a claim for harassing misconduct under the FDCPA, Plaintiff's Summary Judgment Memorandum at 4, that Plaintiff has sufficiently supported her emotional distress claim, *id.* at 6, and that Plaintiff has offered sufficient evidence to establish a nexus between Defendant's conduct and Plaintiff's alleged injuries. *Id.* at 7. The court addresses each of Defendant's arguments in turn.

## A.   FDCPA violations

As stated, Plaintiff asserts three claims under the FDCPA, including pursuant to 15 U.S.C. § 1692d(2) (First Claim), § 1692d(5) (Second Claim), and § 1692e ("Third

Claim).  As relevant to this case, the FDCPA provides

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> *****
> (2) the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> *****
> (5) causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number.
>
> 15 U.S.C. § 1692d ("§ 1692d").

Further,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.
> *****
> (2) The false representation of--
>     (A) the character, amount, or legal status of any debt; or
> *****
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> *****
> (10) The use of any false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e ("§ 1692e").


### 1.    First Claim

Plaintiff claims Defendant violated § 1692d "by using language the natural

consequence of which was [to] abuse the hearer by making the statements" regarding

Defendant's plan to freeze Plaintiff's bank account, thereby denying Plaintiff access to

any SSDI funds deposited into the account, and Defendant's filing of a claim in

Tonawanda Court for $ 26,000 if Plaintiff was unable to pay $ 3,500.  Amended

Complaint ¶ 24.A.  In support of summary judgment, Defendant argues that Plaintiff is

without evidentiary support for her FDCPA claims.  Defendant's Summary Judgment

Memorandum at 1.[12]  Plaintiff argues in opposition to summary judgment that Plaintiff

has sufficiently described her emotional and physical distress Plaintiff experienced

when Defendant called, and that Plaintiff has established an issue of fact as to whether

a nexus between Defendant's calls and Plaintiff's stress and seizures exists.  Plaintiff's

Summary Judgment Memorandum at 6-8.  Defendant argues in further support of

summary judgment that Plaintiff has failed to establish a genuine issue of material fact

exists as to a causal connection between Defendant's collection activity and Plaintiff's

alleged emotional and physical distress.  Defendant's Summary Judgment Reply at 3-6.

Here, the record establishes an issue of material fact as to whether Defendant's threat

to freeze Plaintiff's bank account, thereby denying Plaintiff access to her SSDI funds,

and insisting Plaintiff either pay $ 3,500 or appear in Tonawanda Court where a claim

for $ 26,000 would be filed against Plaintiff constitute violations of § 1692d(2).

 In particular, Plaintiff claims Defendant threatened to seize her social security

disability insurance benefits and told Plaintiff that if she did not pay $ 3,500, she had to

appear in Tonawanda Court with $26,000, despite being advised by Plaintiff that such

statements caused Plaintiff stress and seizures because of Plaintiff's malignant brain

tumor condition. Plaintiff's Affidavit ¶ 5. Additionally, Plaintiff avers she advised

Defendant, in the first telephone call with Defendant, that she had a malignant brain

tumor and "could not handle the stress of [Defendant's] telephone calls to [her] and that

---

[12] Defendant does not assert a specific argument in support of summary judgment on Plaintiff's First and Third Claims, other than the general statement that "Plaintiff's claims lack evidentiary support." Defendant's Summary Judgment Memorandum at 1.

they could cause [her] to suffer seizures," Plaintiff's Affidavit ¶ 4, and that during calls

on November 10, 2008, and November 14, 2008, Plaintiff suffered seizures

characterized by tremor, drooling, difficulty speaking and communicating, and staring

spells. *Id*. ¶ 7. Plaintiff's statements that stress causes her to suffer seizures are

Plaintiff's personal statements of her own experience. Although Defendant moves for

summary judgement arguing Defendant's actions do not constitute "the use of obscene

or profane language the natural consequence of which is to abuse the hearer or

reader," Defendant puts forth no evidence to contradict Plaintiff's claims that the calls

were abusive or that Defendant's calls caused Plaintiff to suffer seizures.

Because the parties dispute whether Defendant's calls to Plaintiff, after Plaintiff

advised Defendant the calls caused her to suffer stress and seizures, an issue of fact

for the jury exists as to whether Defendant used language the natural consequence of

which is to abuse the hearer or reader.  Whether Plaintiff can sustain her burden of

proof at trial on the issue of whether Plaintiff in fact experienced seizures caused by

Defendants with or without medical testimony is a question for the jury.  Accordingly,

Defendant's motion for summary judgement on Plaintiff's First Claim should be

DENIED.


### 2.      Second Claim

Plaintiff claims Defendant violated 15 U.S.C. § 1692d(5) "by repeatedly causing

Plaintiff's telephone to ring with the intent to annoy, abuse and harass."  Amended

Complaint ¶ 24.B.  In seeking summary judgment on this claim, Defendant argues that

because there is a disparity between the number of telephone calls placed by

Defendant to Plaintiff, 56, as compared to the number of calls that were actually answered and resulted in conversations between Plaintiff and Defendant, 14, Plaintiff cannot establish that such calls constituted harassment, oppression or abuse under the FDCPA.  Defendant's Summary Judgment Memorandum at 2-4.  In opposing summary judgment, Plaintiff asserts the number and frequency of Defendant's calls to Plaintiff, particularly after Plaintiff advised Defendant of her cancerous brain tumor condition, that such calls caused her undue stress and seizures, and requested Defendant call Plaintiff's mother instead, establishes a triable issue of fact on her claim under § 1692(5).  In further support of summary judgment on this claim, Defendant asserts that Plaintiff has failed to point to any evidence that Defendant's calls to Plaintiff in connection with Defendant's debt collection activities on two delinquent accounts were intended to annoy, abuse or harass Plaintiff.  Defendant's Summary Judgment Reply at 2-3.

"Whether there is actionable harassment [under § 1692d(5)] or annoyance turns not only on the volume of calls made, but also on the pattern of calls."  *Joseph v. J.J. MacIntyre Companies, LLC.,* 238 F. Supp.2d 1158, 1168 (N.D. Cal. 2002). Additionally, whether the amount of calls constitutes harassment under § 1692d(5) is a question for the jury.  *See Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp.2d 492, 502 (D. Md. 2004) (six calls in a span of five minutes may constitute harassment for the purpose of the FDCPA).  In this case, it is undisputed that Defendant placed a total of 56 calls to Plaintiff, 15 of which were placed after Plaintiff explained to Defendant's employees that she had a malignant brain tumor.  *See* Defendant's Summary Judgment Memorandum at 1 (stating of the 56 calls Defendant placed to Plaintiff from

18

October 8, 2008, through November 10, 2008, 25 resulted in no answer because of a busy signal, weak line, disconnected answering machine, or the outbound line was lost, and 17 resulted in messages left on Plaintiff's answering machine, such that 14 were actually answered by Plaintiff).

Courts consider a range of facts as to the specific volume and pattern of calls sufficient to raise a triable issue of fact of a defendant's intent to annoy or harass and thus become actionable under the FDCPA.  *See Fashakin v. Nextel Communications*, 2009 WL 790350, at *7 (E.D.N.Y. March 25, 2009) (finding six calls in seven-day period where some went unanswered, or no message was left, was sufficient enough to constitute harassing behavior) (citing *Akalwadi* 336 F.Supp. 2d at 506 (reasonableness of whether 26 or 28 calls over a two-month period were sufficient to create jury question on defendant's intent to harass)); *Krapf v. Nationwide Credit Inc.*, 2010 WL 2025323, at *3 (C.D. Cal. May 21, 2010) (citing *Sanchez v. Client Services,* 520 F.Supp.2d 1004, 1012 (N.D. Cal. 2006) (54 calls over six-month period enough to support plaintiff's claim for summary judgment)); *Tucker v. The CBE Group, Inc.*, 2010 WL 1849034, at *1 (M.D. Fla. May 5, 2010) (57 calls over unspecified period insufficient to create a triable issue as to defendant's intent to harass).

The record[13] reveals that, despite being informed by Plaintiff on October 15, 2008, that Plaintiff was disabled with a cancerous brain tumor and therefore unable to work to pay her debts, Defendant continued to call Plaintiff and left messages on

---

[13]Defendant's Summary Judgment Reply includes a call log of telephone calls to Plaintiff from October 8, 2008 - February 9, 2009 with each call described by codes ("call log"). Thut Supplemental Affidavit Exh.1. The call log includes abbreviations but does not include a glossary of the codes to enable the court's full understanding of the details of the calls.  Nor has Defendant submitted an affidavit by any employee familiar with Defendant's call log codes to aid the court in deciphering the call log.

Plaintiff's answering machine on October 18, 20, 21, 22, 23, 24, 27, and 31, 2008, and November 5, 7, 8, 10, and 11, 2008.  Thut Supplemental Affidavit Exh.1. On November 11, 2008, Plaintiff again advised Defendant that Plaintiff had brain cancer, after which time Defendant subsequently called Plaintiff on November 14, 2008, and scheduled a timed call back to Plaintiff for November 17, 2008. *Id*. Defendant's call log substantiates Defendant ceased making calls to Plaintiff only in response to Plaintiff's hiring of an attorney.  *Id*.

In *Prewitt v. Wolpoff & Abramson, LLP.,* 2007 WL 841778, at *3 (W.D.N.Y. Mar. 19, 2007), the court held that the defendant debt collector's continuous calls to the plaintiff debtor after the debtor indicated the debtor was unable to pay the debt could demonstrate to a jury the defendant's debt collection activities intended to abuse, harass, or annoy the debtor.  Significantly, in *Prewitt*, the Plaintiff did not request the defendant cease calling, *id.*, whereas here, Defendant continued to call Plaintiff even after Plaintiff's request that the Defendant cease phoning her, advising that Plaintiff's brain tumor caused her to suffer seizures when under stress, and to direct further inquiries to her mother.

Further, despite Defendant's admission that between October 8, 2008 and November 20, 2008, Defendant placed 25 calls to Plaintiff that resulted in no answer, busy signal, weak line, answering machine disconnected or outbound hold lost, left approximately 17 messages for Plaintiff, and did not in fact speak with Plaintiff when Plaintiff did not answer, Thut Supplemental Affidavit ¶ 7,  "'the statute explicitly pertains to the act of 'causing a telephone to ring' and provides that this act alone, when done with the 'intent to annoy, abuse, or harass' is a violation of 15 U.S.C. § 1692d(5).'"

*Prewitt* at *3.

The evidence here, viewed, as required on summary judgment, in the light most favorable to Plaintiff, suggests a volume and frequency of calls greater than the number in *Fashakin*, *Sanchez* and *Akalwadi,* but less frequent than *Tucker*.  Further, Plaintiff claims the call continued even after Plaintiff told Defendant about her malignant brain tumor, advised that Defendant's call caused her stress and seizures, and requested Defendant call Plaintiff's mother instead of Plaintiff.  On this record, a reasonable jury could find that the volume of calls that the Defendant made even after Plaintiff explained she had a cancerous and debilitating brain tumor, and the Defendant's persistence in calling Plaintiff up until she retained an attorney demonstrates Defendant acted with "[a]n intent to annoy, abuse, or harass" Plaintiff in violation of 16 U.S.C. § 1692d(5).

Accordingly, as material facts are raised as to the intentional and harassing nature of Defendant's calls to Plaintiff, Defendant's Motion for Summary Judgment on Plaintiff's second FDCPA claim should be DENIED.

### 3.      Third Claim

Plaintiff alleges Defendant violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10)[14] by stating Plaintiff would have to either immediately pay Defendant $ 3,500 or appear in Tonawanda Court to defend a claim for $ 26,000 which

---

[14] The court notes that despite its apparent applicability to the instant case, Plaintiff's Amended Complaint does not assert a claim under § 1692e(4) (prohibiting, as relevant, debt collectors from making false "representation or implication that nonpayment of any debt will result in . . . the seizure . . . of any property or wages of any person unless such action is lawful and the debt collector . . . intends to take such action."

Defendant had already filed, and that Defendant would seize Plaintiff's SSDI benefits,

and freeze Plaintiff's bank account and any SSDI benefit funds in such account.

Amended Complaint ¶ 24.C.  As discussed, Discussion, *supra*, at 15 and n.  12,

Defendant argues in suppport of summary judgment on this claim only that Plaintiff is

without evidentiary support for her FDCPA claims.  Defendant's Summary Judgment

Memorandum at 1.  In opposition to summary judgment, Plaintiff argues that

"Defendant harassed and attempted to deceive Plaintiff by falsely threatening her with

legal proceedings, threatening to take away her Social Security benefits, and making

light of her brain cancer."  Plaintiff's Summary Judgment Memorandum at 9.  In further

support of summary judgment, Defendant argues that Defendant's employees have

denied making any such statements to Plaintiff.  Defendant's Summary Judgment

Reply at 1-2.

Generally, 15 U.S.C. § 1692e provides a "debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection of

any debt."  Further, as relevant to this case, 42 U.S.C. § 407(a) ("§ 407(a)") provides

> The right of any person to any future payment under this chapter [Social Security] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a)(bracketed material added).

Plaintiff avers Defendant threatened to seize Plaintiff's SSDI payments and to

freeze Plaintiff's bank account along with any SSDI benefits deposited into such

account. Plaintiff's Affidavit ¶ 5.  Defendant does not dispute that making such

statements would violate 15 U.S.C. § 1692e; rather, in support of summary judgment

on this claim, Defendant relies on statements made by various employees of Defendant that such employees knew it was improper to threaten a debtor with legal action or garnishment of the debtor's social security benefits, and deny threats to Plaintiff that Defendant would freeze Plaintiff's bank account or take Plaintiff's social security benefits.  *See*, *e.g.*, Spenser Transcript at 16 (denying ever telling or hearing another debt collector advising that the consumer's bank account or social security funds could be taken to pay the debt); Saleh Transcript at 11 (denying ever telling a consumer Defendant would seize the consumer's bank account if payment wasn't made and acknowledging debt collectors are not permitted to take social security payments); and Yanock Transcript at 15 (denying ever advising a consumer it was possible for Defendant to freeze the consumer's bank account or seize the consumer's social security benefits). Insofar as portions of the Defendant's employee's testimony establishes the employees were trained not to discuss the possibility of lawsuits with a debtor, Spencer Transcript at 23, discuss the creditor's right to take a debtor's bank account, *id*. at 14, or social security benefits, *id*. at 15, such testimony is contrary to Plaintiff's assertion that the Defendant's employees advised Plaintiff she would have to appear in court to defend against a $ 26,000 claim Defendant had already filed, Plaintiff Affidavit ¶ 5, and that Defendant would seize Plaintiff's bank account and social security disability insurance benefits.  *Id*.

The parties thus dispute whether Defendant's employees did, as Plaintiff asserts, falsely threaten to seize Plaintiff's financial resources that were otherwise exempt from collection, a material question of fact exists as to whether Plaintiff can recover on her Third Claim alleging Defendant made false representation and threats in attempting to

collect on the subject debt from Plaintiff.  *Hennenberger v. Slamowitz*, 2010 WL

1405578 at *5 (W.D.N.Y. March 31, 2010)(summary judgment not appropriate where

question of facts exists as to whether debt collector used false, deceptive or misleading

representations).

Thus, whether Defendant's employees actually threatened Plaintiff with legal

action, threatened to freeze Plaintiff's bank account, and seize Plaintiff's social security

disability insurance benefits presents substantial questions of credibility and thus is a

question for the jury.  Defendant's motion for summary judgment on Plaintiff's Third

Claim should be DENIED.

**B.    Intentional Infliction of Emotional Distress**

Plaintiff has also asserted a common law claim under New York law for

intentional infliction of emotional distress.  Amended Complaint ¶ 25.  In seeking

summary judgment on this claim, Defendant argues that Plaintiff cannot meet the strict

standard for a finding of emotional damage established by the New York Court of

Appeals for a common law infliction of emotional distress claim, nor is there any

"reasonable nexus between the nature of NES's conduct and the emotional and

physical distress which Plaintiff claims to have suffered."  Defendant's Summary

Judgment Memorandum at 5-6.  In opposition to summary judgment, Plaintiff maintains

that the "campaign of telephone harassment" alleged by Plaintiff sufficiently establishes

a claim for intentional infliction of emotional distress under New York common law.

Plaintiff's Summary Judgment Memorandum at 4-6.  In further support of summary

judgment, Defendant argues that even assuming, *arguendo*, Plaintiff's assertions

regarding Defendant's attempt to belittle the seriousness of Plaintiff's medical condition, questioning the legitimacy of Plaintiff's disability, and not agreeing to Plaintiff's request that Defendant discuss collection of Plaintiff's debts with Plaintiff's mother instead of Plaintiff, such conduct is, as a matter of law, not so "shocking and outrageous" as to support Plaintiff's intentional infliction of emotional distress claim.  Defendant's Summary Judgment Reply at 6-8.

In New York, a claim for intentional infliction of emotional distress requires that the defendant engage in "'extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another. . . .'" *Murphy v.  American Home Products Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.E.2d 1978)).  "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. (quoting Restatement of Torts, Second, § 46, comment *d*). To establish this tort, a plaintiff must establish that a defendant's "extreme or outrageous conduct" and intent to cause or disregard the substantial probability of causing severe emotional distress, caused plaintiff to suffer "severe emotional distress." *Howell v. New York Post Company, Inc.*, 612 N.E.2d 699, 702 (N.Y. 1993).

Although a claim for intentional infliction of emotional distress can be difficult to prove, such claim can be substantiated by evidence establishing the plaintiff was the target of planned harassment or threats, accompanied by vindictiveness, taunting, or derision.  *See Bonner v. Guccione*, 916 F.Supp.  271, 278 (S.D.N.Y. 1996) (denying motion to dismiss plaintiff's claim for sexual harassment where plaintiff alleged she was

the target of regular harassment and threats accompanied by demeaning conduct).

Similarly, in the instant case, Plaintiff avers that Defendant targeted Plaintiff for

harassment and threats, despite knowledge that Plaintiff's malignant brain tumor

rendered Plaintiff unable to work, and that Plaintiff had advised Defendant that its calls

to Plaintiff were stressful and caused Plaintiff to have seizures.

In particular, Plaintiff alleges that during telephone calls with Defendant on

November 10, 2008, and November 19, 2008, Plaintiff suffered seizures characterized

by "tremor, drooling, difficulty speaking and communicating and starring spells."

Plaintiff's Affidavit ¶ 7.  Plaintiff avers Defendant's calls continued with threats of

freezing Plaintiff's bank account and seizing Plaintiff's social security insurance benefits

even after Plaintiff explained she had a cancerous brain tumor, suffered seizures as a

result of stress, and was unable to work to pay her debts.  *Id*.  Assuming, *arguendo*,

Plaintiff's seizures, or other serious physical abnormality similar to symptoms of a

seizure, affected her speech enough that Defendant's employees knew, or should have

realized Plaintiff was suffering a seizure, on this record, and taking all reasonable

experiences in Plaintiff's favor, the court finds that a reasonable jury could conclude

Defendant's continued conduct, including calls in which Plaintiff was threatened with

legal seizure of her SSDI benefits and falsely advised Plaintiff of a required court

appearance, despite knowledge of Plaintiff's brain tumor condition, arises to "extreme

or outrageous conduct."

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Fourth

Claim alleging intentional infliction of emotional distress under New York common law

should be DENIED.

26

## **CONCLUSION**

Based on the foregoing, Defendant's Motion to Strike a portion of Plaintiff's

Affidavit (Doc. No. 47) is DENIED. Defendant's Motion for Summary Judgment (Doc.

No. 42), should be DENIED.

SO ORDERED as to
Defendant's Motion to Strike

/s/ *Leslie G. Foschio*
_____
        LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


                                        Respectfully submitted as to
                                        Defendant's Motion for Summary Judgment

                                            /s/ *Leslie G. Foschio*
                                        _____
                                            LESLIE G. FOSCHIO
                                        UNITED STATES MAGISTRATE JUDGE


DATED:        March 30, 2011
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ Leslie G. Foschio

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 30, 2011
                 Buffalo, New York